UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-00051-TWP-KMB |
| | ) |
| THE SPEAKEASY BAR & GRILL, LLC d/b/a | ) |
| THE BARRELHOUSE ON MARKET Clerk's | ) |
| Entry of Default Entered on 8/9/23, | ) |
| BRANDON CRUTCHER, | ) |
| ARNIE YOUNGBLOOD Clerk's Entry of Default | ) |
| Entered on 8/9/23, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Plaintiff and insurer Scottsdale Insurance Company ("Scottsdale") (Filing No. 26). Scottsdale initiated this action seeking a declaration from this Court and a determination of the parties' rights and obligations under Scottsdale's Commercial General Liability & Liquor Liability Policy No. CPS7204687, issued to Defendants Speakeasy Bar & Grill, LLC d/b/a The Barrelhouse on Market (the "Speakeasy") and its employee, Arnie Youngblood ("Youngblood"), for injuries incurred during a bar brawl between several Speakeasy patrons. (Filing No. 1.) For the following reasons, Scottsdale's Motion for Summary Judgment is **granted**.

I. **BACKGROUND**

A. **The Incident and State Court Case**

On the evening of July 25, 2020, Defendant Brandon Crutcher ("Crutcher") was involved in a bar brawl at the Speakeasy (the "Incident") (Filing No. 26-1 at 2). The Incident occurred when Youngblood attempted to escort a man out of the Speakeasy after asking him to leave (Filing No.

26-4 at 3). The man tried to grab Youngblood, and both men fell, at which point "all the friends swarmed" them. *Id*. Although Youngblood was able to "g[e]t [out] from under the pile," there were a number of people who were "hitting or kicking" for "a good while." *Id*. At some point, Youngblood went to help a bartender who was "being attacked." Youngblood grabbed someone (who he now guesses was Crutcher), "pulled him away," and "told him to stay there and stay out of it." *Id.* at 3–4. When Youngblood went to grab the bartender's assailant, he was "grabbed from behind in a chokehold" by someone. Youngblood threw that person to the ground. *Id.* at 4. That person was Crutcher. *Id.* Youngblood did not intend to injure Crutcher. He only intended to "get whoever it was off of [him]." *Id*. at 5.

On March 25, 2021, Crutcher filed a personal injury lawsuit against the Speakeasy and Youngblood in the Clark County Circuit Court, titled *Brandon Crutcher v. The Speakeasy Bar & Grill, LLC d/b/a The Barrelhouse on Market and Arnie Youngblood*, Cause No. 10C02-2103-CT-000032 (the "State Court Action"). (Filing No. 1-2.) While the State Court Action was pending, Scottsdale and Crutcher attempted to settle Crutcher's claims. However, a dispute arose as to Scottsdale's maximum coverage obligations. Scottsdale contends that coverage is capped at $25,000.00 per event and $50,000.00 in the aggregate, and Crutcher contends the general policy limit of $1,000,000.00 applies. As a result, settlement discussions stalled, and Scottsdale filed this declaratory judgment action to resolve the parties' dispute. (Filing No. 1.)

**B.**     **The Policy**

Scottsdale issued Commercial General Liability & Liquor Liability Policy No. CPS7204687 with a policy period of June 18, 2020 to June 18, 2021 (the "Policy"), to the Speakeasy (Filing No. 1-3 at 7). The Policy's Insuring Agreement provides that Scottsdale "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." *Id.* at 25. The general Policy limit is $1,000,000.00.

2

*Id.* at 22.  The Policy contains and incorporates by reference several endorsements and exclusions to coverage, two of which are relevant here: the Expected or Intended Injury Exclusion, and the Assault and/or Battery Endorsement.

The Expected or Intended Injury Exclusion provides that "[t]his insurance does not apply to . . . 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." *Id.* at 26, § 2(a).  However, this Exclusion "does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property" (the "Self-Defense Exception").  *Id.* at 26.

The Assault and/or Battery Endorsement provides that Scottsdale will "afford coverage with respect to Assault and/or Battery Liability only as indicated on the endorsement and subject to the provisions as set forth in this endorsement at liability limits of $25,000 Each Event and $50,000 Aggregate unless otherwise stated below."  *Id.* at 64.  The Insuring Agreement for the Assault and/or Battery Endorsement provides:

> **1.  COVERAGES—ASSAULT AND/OR BATTERY LIABILITY**
>
> We will pay on your behalf all sums which you shall become legally obligated to pay as damages because of 'injury,' 'bodily injury,' 'property damage,' 'damages' or 'personal and advertising injury' to any person arising out of Assault and/or Battery only if the 'injury,' 'bodily injury,' 'property damage,' 'damages' or 'personal and advertising injury';
>
> **a**.  Takes place at the designated premises; and
>
> **b**.  Occurs during the policy period.
>
> We will have the right and duty to defend any suit against you seeking such 'damages,' . . . but we shall not be obligated to pay any claim or judgment or to defend any suit after the applicable Limit of Liability shown in this endorsement has been exhausted.

*Id.* at 65.  The Policy does not define "Assault" or "Battery".

3

C.    **The Instant Declaratory Judgment Action**

On April 4, 2023, Scottsdale initiated this declaratory judgment action to clarify its obligations under the Policy. In its Complaint, Scottsdale seeks a declaration that under the clear and unambiguous terms of the Policy, Scottsdale's coverage obligations related to the State Court Action are limited to $25,000.00 per event and $50,000.00 in the aggregate (Filing No. 1 at 10). Crutcher timely filed his Answer on May 25, 2023 (Filing No. 16). The Speakeasy and Youngblood failed to timely respond to the Complaint. On Scottsdale's motion, the Clerk entered default against them on August 9, 2023 (Filing No. 23). Neither the Speakeasy nor Youngblood has moved to set aside the entry of default.

On September 29, 2023, Scottsdale filed its Motion for Summary Judgment, arguing that there are no genuine disputes of material fact and that it is entitled to declaratory judgment as a matter of law (Filing No. 26). Crutcher filed his response on October 27, 2023 (Filing No. 27), and on November 16, 2023, Scottsdale filed its reply (Filing No. 28).

## II.    LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or

conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.   DISCUSSION

Scottsdale contends that under the unambiguous terms of the Policy, the Assault and/or Battery Endorsement limits the maximum coverage available for liability in the State Court Action to $25,000.00 per event and $50,000.00 in the aggregate. Crutcher responds that summary judgment is not appropriate for two reasons: (A) the Policy is ambiguous; and (B) there are genuine disputes as to whether Youngblood intended to injure Crutcher. The Court will discuss each argument in turn.

A.     **Ambiguity of the Policy**

Crutcher contends that the Policy is ambiguous, as the Assault and/or Battery Endorsement conflicts with the Expected or Intended Injury Exclusion. Specifically, he argues that the Assault and/or Battery Endorsement is ambiguous as to whether it contains an exclusion for self-defense, like the Expected or Intended Injury Exclusion does. Crutcher argues that his injuries, which resulted from Youngblood's alleged self-defense, could fall under either the Assault and/or Battery Endorsement or the Self-Defense Exception to the Expected or Intended Injunction Exclusion, which would create ambiguity as to whether the applicable coverage amount is $1,000,000.00 under the Self-Defense Exception or $25,000.00 under the Assault and/or Battery Endorsement. Crutcher notes that ambiguities in insurance policies must be resolved against Scottsdale, and if indeed the Policy is ambiguous, Scottsdale would be required to indemnify damages up to $1,000,000.00. *See, e.g.*, *Auto-Owners Inc. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012) ("Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, Indiana courts construe the insurance policies strictly against the insurer.").

Scottsdale contends that there is no ambiguity. On reply, Scottsdale asserts that the Self-Defense Exception merely allows for coverage for some expected or intended injuries where there would otherwise be no coverage. The Self-Defense Exception does not, however, preclude the application of other Policy provisions, including the Assault and/or Battery Endorsement ([Filing No. 28 at 3](#)–4). The Court agrees with Scottsdale.

A contract term is ambiguous if it is susceptible to more than one reasonable interpretation. *See, e.g.*, *Erie Indem. Co. for Subscribers at Erie Ins. Exchange v. Estate of Harris*, 99 N.E.3d 625, 630 (Ind. 2018). Here, the Policy is not susceptible to more than one reasonable interpretation, even when the Self-Defense Exception and Assault and/or Battery Endorsement are both applied.

6

Crutcher argues that if the Self-Defense Exception applies to certain injuries, then those injuries "have $1,000,000 of liability coverage," (Filing No. 27-1 at 12), but Crutcher misunderstands how the Self-Defense Exception applies. As Scottsdale argues, the Self-Defense Exception only provides that injuries resulting from self-defense are not excluded from coverage. It does not preclude the application of any other endorsements, exclusions, or limitations. If the Self-Defense Exclusion applies (such that coverage is not excluded under the Expected or Intended Injury Exclusion), then the Assault and/or Battery Endorsement could still limit any available coverage. Stated differently, if Youngblood's actions constituted self-defense *and* assault and/or battery, then Crutcher's injuries would not be excluded by the Expected or Intended Injury Exclusion (*i.e.*, his injuries *could* be covered), but any coverage would still be limited by the Assault and/or Battery Endorsement.

The potential application of both the Self-Defense Exception and the Assault and/or Battery Endorsement does not lead to any ambiguity. As Scottsdale points out in its reply, several other courts have rejected the same ambiguity argument raised by Crutcher and held that reasonable force exceptions do not create ambiguities in assault and/or battery provisions (Filing No. 28 at 3, 4 n.2 (citing cases)). In an unpublished decision, the Indiana Court of Appeals rejected this very argument. In *Alea London Ltd. v. Nagy*, No. 45A05-1202-CT-83, 2012 WL 2674552 (Ind. Ct. App. July 6, 2012) (unpublished), the policy at issue excluded from coverage "any claim arising out of … Assault and/or Battery," as well as "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured," other than "'bodily injury' resulting from the use of reasonable force to protect persons or property." Defendant Nagy argued that "a harmonized reading of the policy language as a whole establishes that 'use of reasonable force to protect persons or property' is not an 'assault' or 'battery' and thus falls within the scope of coverage." *Id.* at *3. The Indiana

7

Court of Appeals rejected this argument, declining "to write the exception to the Expected or Intended Injury Exclusion into the Assault and Battery Exclusion." The *Nagy* court further explained that the Indiana Supreme Court has recognized "'that each exclusion is meant to be read with the insuring agreement, independently of every other exclusion. If any one exclusion applies there should be no coverage, regardless of the inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions.'" *Id.* (quoting *Indiana Ins. Co. v. DeZutti*, 408 N.E.2d 1275, 1278 (Ind. 1980)).

If both the Self-Defense Exception and the Assault and/or Battery Endorsement were to apply, then the Policy would unambiguously provide that Crutcher's injuries are not excluded from coverage, but any coverage is capped at $25,000.00 per event or $50,000.00 in the aggregate. There is no ambiguity in the Policy precluding summary judgment in Scottsdale's favor.

### B.   Youngblood's Intent

Crutcher also argues that genuine disputes exist as to whether Youngblood intended to injure Crutcher (Filing No. 27-1 at 12). On reply, Scottsdale does not refute this point, and instead asserts that Youngblood's intent is not a determinative fact (Filing No. 28 at 8). The Court again agrees with Scottsdale.

The Assault and/or Battery Endorsement applies to bodily injury "arising out of Assault and/or Battery" (Filing No. 1-3 at 65). Scottsdale maintains that Crutcher's injuries "arose out of" assault and/or battery, regardless of whether Youngblood specifically assaulted or battered Crutcher, so the Assault and/or Battery Endorsement applies (Filing No. 26-1 at 12–15; Filing No. 28 at 5–8).

The interpretation of the phrase "arising out of" is determinative. In Indiana, "[t]he goal of contract interpretation is to ascertain and give effect to the parties' intent as reasonably manifested by the language of the agreement." *Reuille v. E.E. Brandenberger Constr., Inc.*, 888 N.E.2d 770,

8

771 (Ind. 2008). Contract interpretation is a question of law. *See In re Sw. Airlines Voucher Litig.*, 898 F.3d 740, 743 (7th Cir. 2018) ("When the facts are undisputed . . . , contract interpretation is a legal question."). The provisions of an insurance contract are subject to the same rules of construction as are other contracts. *Cincinnati Ins. Co. v. Adkins*, 935 N.E.2d 190, 192 (Ind. Ct. App. 2010). The Court reads the contract as a whole, construing language to give meaning to all the contract's words, terms, and phrases. *Nikish Software Corp. v. Manatron, Inc.*, 801 F. Supp. 2d 791, 800 (S.D. Ind. 2011). Neither party is entitled to special construction or favorable inferences on the language in the contract simply because the issue is now presented for summary judgment. *See id.* at 800–02.

"In Indiana, the phrase 'arising out of' as used in insurance policies long has been construed to mean that one thing must be the 'efficient and predominating' cause of something else." *Keckler v. Meridian Sec. Ins. Co.*, 967 N.E.2d 18, 23 (Ind. Ct. App. 2012). "[W]hen there is more than one possible cause of an otherwise insurable injury, it generally is a question of fact as to what the predominant injury was in order to determine if the injury 'arose out of' an activity that is excluded from coverage." *Id.* Indiana courts have interpreted other assault and battery provisions with "arising out of" language broadly. *Smock v. Am. Equity Ins. Co.*, 748 N.E.2d 432, 436 (Ind. Ct. App. 2001) ("[T]he exclusion precludes coverage for a wide range of risks associated with a battery.").

Scottsdale maintains that the Incident constitutes assault and/or battery, and Crutcher's alleged injuries "arose out of" the Incident, so whether Youngblood intended to harm Crutcher is immaterial (Filing No. 28 at 6). In his Answer, Crutcher admits that he "participated in and was injured in connection with a physical altercation involving numerous patrons at the Speakeasy"

9

and that his state court claims "aris[e] out of" that altercation (Filing No. 16 at 2, 4). It is undisputed that the Incident was a jumble of assaults and batteries, culminating in Crutcher's alleged injuries.

In at least three cases, Indiana state and federal courts have stated that an assault and battery provision in an insurance policy can apply even where the claimant's specific claims or injuries were not directly caused by an assault or battery. *Smock*, 748 N.E.2d at 436 ("As our previous discussion indicates, the assault and battery exclusion is not triggered only when the cause of action explicitly alleges an intentional assault or battery. Rather, the exclusion precludes coverage for a wide range of risks associate with a battery."); *Omega USA Ins. v. D & S Indy, Inc.*, No. 11-cv-355, 2012 WL 3614040, at *6 (S.D. Ind. Aug. 21, 2012) (finding that tavern's failure to prevent assault "arose out of" the assault itself); *see also Essex Ins. Co. v. Good Drinks, LLC*, No. 12-CV-011, 2013 WL 2425158, at *7 n.3 (N.D. Ind. June 4, 2013) ("[T]he actual cause of [the claimant's] injury matters not since the injuries undisputedly arose out of an assault and battery (or even prevention thereof) during the encounter with the bouncers.").

The assault and battery committed during the Incident was the efficient and predominating cause of Crutcher's injuries. Had there been no assaults or batteries during the Incident, Crutcher would not have suffered his injuries. Crutcher's injuries therefore "arose out of" an assault and/or battery, and the Assault and/or Battery Endorsement unambiguously applies to limit Scottsdale's coverage obligations.

Further, even if Crutcher's injuries did not "aris[e] out of" the Incident generally, and only "arose out of" Youngblood's acts, summary judgment would still be appropriate because Youngblood undisputably intended to throw Crutcher (Filing No. 28 at 8–10). The Northern District of Indiana, in interpreting a similar assault and battery provision, stated that under Indiana law, "[t]he clear meaning of assault and battery refers to an intentional touching or the

10

apprehension of such, and *does not require an intent to injure*." *Essex Ins. Co., Inc.*, 2013 WL 2425158, at *4 (emphasis added) (citing *Singh v. Lyday*, 889 N.E.2d 342, 360 (Ind. Ct. App. 2008) ("One is liable for the tort of battery if '(a) he acts intending to cause a harmful or offensive contact with the person of the other or third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results.'" (quoting *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind. 2007))).

Several Indiana courts and secondary sources confirm that the tort of battery requires only an intent to cause offensive contact and does not require an intent to injure. *See, e.g.*, *Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007) ("[W]hile battery is the intentional harmful or offensive contact . . . [a] touching, however slight, may constitute an assault and battery.") (citations omitted); *Smock*, 748 N.E.2d at 436 ("The policy does not define [battery for purposes of the assault and battery exclusion], but an English language dictionary provides that a 'battery' is 'the act of battering, beating, or pounding ... [the] illegal beating or touching of another person.'") (citing Webster's New World Dictionary 118 (3rd college ed. 1988)); *see also* Restatement of Torts § 85 (Am. L. Inst. 2024) ("If an act is done with the intention of inflicting upon another an offensive but not a harmful bodily contact, . . . and that act causes a bodily contact to the other, the actor is liable for a battery, even though the act was not done with the intention of bringing about the resulting bodily harm."); *Battery*, Merriam-Webster.com Dictionary, https://merriam-webster.com/dictionary/battery (last visited Aug. 6, 2024) (defining battery as "an offensive touching or use of force on a person without the person's consent"); *Battery*, Black's Law Dictionary (12th ed. 2024) (defining battery as "[t]he nonconsensual touching, or use of force against, the body of another with the intent to cause harmful or offensive contact").

11

Crutcher cites three Indiana cases[1] that purportedly show that Scottsdale must prove Youngblood intended to injure Crutcher, but those cases are distinguishable. In *Sans v. Monticello Insurance Co.*, 676 N.E.2d 1099 (Ind. Ct. App. 1997), the plaintiff, Sans, was shot by a bartender after attempting to re-enter a tavern. *Id.* at 1100. In an affidavit, the bartender stated that he only intended to use the gun to scare Sans and did not intend to shoot Sans or even fire the gun. *Id.* The insurance policy at issue excluded from coverage bodily injury "arising out of assault and battery." *Id.* The insurer moved for summary judgment that the assault and battery exclusion applied, which the trial court granted. Sans appealed the issue of "whether the trial court correctly found that coverage was excluded under the insurance policy where the evidence in the light most favorable to the nonmovants indicates that [the bartender] did not intend to fire the gun." *Id.* The Indiana Court of Appeals reversed the trial court because it was "not prepared to hold, as a matter of law, that a .25 caliber handgun cannot 'go off' accidentally, but will only operate to carry out the specific intentions of the person holding it." *Id.* at 1104. Here, Crutcher does not claim that Youngblood accidentally threw him off his back. To the contrary, Crutcher cites Youngblood's deposition, in which he states he intentionally did so. It does not matter why Youngblood intended to throw Crutcher, how hard he intended to throw Crutcher, or whether he meant to injure Crutcher.

The distinction between an intent to batter and an intent to injure is further illustrated by the other two cases cited by Crutcher (and cited in *Sans*). In *Home Insurance Co. v. Neilsen*, 332 N.E.2d 240, 243 (Ind. Ct. App. 1975), the Indiana Court of Appeals held that "insurance coverage *was* properly excluded where the insured had admitted that he had intentionally struck the other

---

[1] Crutcher also cites a 1963 case from the Michigan Supreme Court, *Morrill v. Gallagher*, 122 N.W.2d 687 (Mich. 1963). This case has very little persuasive value because of its age and because it is from Michigan, applying Michigan law. *Morrill* is further distinguishable because the policy exclusion at issue in that case, unlike the Assault and/or Battery Endorsement here, required that "the *injury* must be cause 'intentionally.'" *Id.* at 691 (emphasis in original); *id.* at 583 ("The exclusions so invoked read as follows: . . . '(c) to injury, sickness, disease, death, or destruction caused intentionally by or at the direction of the Insured.'").

12


man *although he had not intended to cause injury*." *Id.* at 243–44 (emphases added).  The *Neilsen* court stated, as an example, "[a] defendant may assert the rock was accidentally released or was not aimed at the victim, but he will not be heard to say he intended to throw the rock softly." *Id.* at 243–44.  In *Franklin General Insurance Co. v. Hamilton*, 133 N.E.2d 93 (Ind. Ct. App. 1956), "an insured motorist intentionally began to back up his car in order to 'playfully' tap the car behind him, not seeing that a person had placed himself between the two cars before it was too late to avoid pinning the person between the cars." *Sans*, 676 N.E.2d at 1103 (summarizing the facts of *Franklin General*).  The Indiana Court of Appeals concluded that although the motorist may have been negligent, "the evidence does not lead inescapably to the sole conclusion his conduct showed such an intent or reckless disregard for the safety of others and willingness to inflict the injury that would require us to hold that, as a matter of law, he was guilty of assault and battery." *Franklin General*, 133 N.E.2d at 96.

In *Sans*, *Neilsen*, and *Franklin General*, the material intent was the intent to commit the act that injured the plaintiff—the intent to fire a gun, the intent to strike someone with a fist, and the intent to hit someone with a car, respectively. It was not, as Crutcher contends, an intent to injure the plaintiff. Neither party disputes that Youngblood intended to throw Crutcher.  Youngblood did not throw him accidentally or negligently.  As stated during his deposition, his "*intention* was to get whoever it was off of me."  (Filing No. 26-3 at 5 (emphasis added)).  There is no genuine dispute of material fact that Crutcher's injuries arose out of assault and/or battery, and the Assault and/or Battery Endorsement clearly and unambiguously limits Scottsdale's coverage obligations in the State Court Action to $25,000.00 per event or $50,000.00 in the aggregate.  Scottsdale is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons discussed above, Scottsdale's Motion for Summary Judgment (Filing No. 26) is **GRANTED**. Scottsdale is entitled to a judgment declaring that it is only obligated under the Policy to provide coverage up to $25,000.00 per event / $50,000.00 in the aggregate for the claims asserted in the State Court Action or for any other claims arising from the Incident.

Final Judgment will issue under separate order.

**SO ORDERED**.

Date: 9/16/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Edward M. O'Brien
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
edward.obrien@wilsonelser.com

William Andrew Theodoros
THEODOROS & ROOTH, P.C.
william@trinjurylaw.com